## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **ANASTASIYA TRAVINA,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No.  A-21-CV-01040-RP** |
| | § | |
| **THE UNIVERSITY OF TEXAS,** | § | |
| **JACK LIU,** | § | |
| *Defendants* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
         UNITED STATES DISTRICT JUDGE

Before the Court are the Motions to Dismiss filed by Defendants the University of Texas at Austin and Jack Liu, Dkts. 16; 23; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.     BACKGROUND

Plaintiff Anastasiya Travina brings this lawsuit against Defendants the University of Texas at Austin ("UT Austin") and Jack Liu based on her experience as a student in the data science program at UT Austin. Dkt. 1. Travina is a Russian immigrant who enrolled at UT Austin around 2013, and began studying within the Department of Statistics and Data Sciences in 2015. *Id.* at 3. In 2019, Travina experienced homelessness and food insecurity due to financial difficulties. *Id.* Travina alleges that Liu, a fellow student and teaching assistant in her department, began

abusing her because of her vulnerable position as an unhoused, immigrant student at the university. *Id.* at 3-6.

Specifically, Travina alleges that Liu gave her his old computer in exchange for her help grading assignments for him. *Id.* at 3. Liu allegedly forced Travina to complete these grading tasks "on impossible deadlines," called her his "slave," berated her, and threatened to report her to the police at UT Austin and to Immigration and Customs Enforcement if she did not comply with his demands—which also included "household chores like dishes and cleaning." *Id.* at 3-4. When Travina failed to meet one of Liu's grading deadlines, he reported her to the UT Austin police for sleeping on campus. *Id.* Liu also began sexually harassing Travina by asking her sexually explicit questions, and by indicating that he wanted to "engage in sexual activity with her." *Id.* at 3-4. In November 2019, Liu sexually assaulted Travina by "groping her breasts and vagina and holding her down with his body in an attempt" to rape her. *Id.* at 4. Liu's actions caused Travina "extreme panic, physical harm, and lasting damage." *Id.* Travina reported the sexual assault to the UT Austin police department about two months after the incident. *Id.* at 5.

Some of Travina's colleagues also helped her to lodge a Title IX complaint with UT Austin, which opened a formal investigation into Liu,[1] but ultimately did not take any further action when Liu left the university months later. *Id.* at 4-5. Travina

---

[1] Travina alleges that "[o]n information and belief, Mr. Liu had previously been the subject of numerous Title IX complaints based on sexual harassment and abuse, but U.T. had not taken any meaningful action to redress and prevent future harassment and had allowed him to continue as a Teaching Assistant with access to students and other faculty and staff." Dkt. 1, at 3.

brings causes of action for violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 15 U.S.C. § 1589, and Texas statutes prohibiting forced labor against both Defendants. *Id.* at 6-7. Travina also brings claims against UT Austin for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., and negligent hiring and supervision, as well as causes of action against Liu for common law assault, indecent assault, intentional infliction of emotional distress, and false imprisonment. *Id.* at 7-11. UT Austin moved to dismiss Travina's claims for lack of subject matter jurisdiction and failure to state a claim, Dkt. 16, while Liu moved to dismiss her indecent assault[2] and intentional infliction of emotional distress claims for failure to state a claim. Dkt. 23.

## II.      LEGAL STANDARDS

### A.      12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule

---

[2] Travina does not oppose dismissal of her indecent assault claim. Dkt. 25, at 1. The undersigned will thus recommend that the District Court grant Liu's motion to dismiss this claim as unopposed and dismiss Travina's indecent assault claim (Count 8).

12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## B.  12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.    DISCUSSION

### A.    UT Austin's Motion to Dismiss

Travina brought causes of action against UT Austin for: (1) violations of the TVPRA; (2) forced labor (in violation of § 20A.02 of the Texas Penal Code); (3) violations of Title IX (20 U.S.C. § 1681, et seq.); and (4) negligent hiring and

supervision. Dkt. 1, at 6-11. UT Austin moves to dismiss Travina's Counts 1, 2, and 4 against it as barred by sovereign immunity, and moves to dismiss all claims against it for failure to state a claim. Dkt. 16. The undersigned addresses UT Austin's bases for dismissal below.

### 1.   Sovereign Immunity

UT Austin first moves to dismiss three of Travina's claims as barred by the doctrine of sovereign immunity. Dkt. 16, at 6-9. States are generally immune from suit. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). "Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Id.* Claims barred by sovereign immunity are properly dismissed under Rule 12(b)(1) without prejudice. *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996). Here, UT Austin is undoubtably considered an arm of the state of Texas. *Daniel v. U.T. Sw. Med. Ctr.*, 2019 WL 1778637, at *1 (N.D. Tex. Apr. 22, 2019), *aff'd sub nom. Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253 (5th Cir. 2020) ("it is well settled that UTSMC is an arm of the state of Texas.").

### a.   *Count I: Violations of the TVPRA*

UT Austin argues that Travina's claim for violations of the TVPRA should be dismissed because "Congress has not validly abrogated the state's Eleventh Amendment immunity[3] as it relates to a TVPRA claim," and as such, this Court

---

[3] The phrase "Eleventh Amendment immunity" is a misnomer. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 713 (1999) (recognizing that states' sovereign immunity "neither derives from, nor

lacks subject matter jurisdiction over it. Dkt. 16, at 6-7. Travina responds that because the TVPRA creates a cause of action against "whoever knowingly provides or obtains the labor or services of a person by various illegal coercive means," Congress intended to abrogate the state's sovereign immunity through the language of the statute. Dkt. 21, at 17-18 (citing 18 U.S.C. §§ 1589 (a), 1595 (a) (emphasis added)).

While a statute need not include a "talismanic incantation[ ] of the magic words" "'waiver' or 'condition,'" any waiver must be "unequivocally expressed" within the statute. *Sossamon v. Texas*, 563 U.S. 277, 292 (2011) ("foundational rule [of] waiver of sovereign immunity [is that it] must be unequivocally expressed and strictly construed"); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 281 (5th Cir. 2005) (finding frivolous argument that "absent talismanic incantations of magic words, there can be no waiver" of sovereign immunity). Here, the statute's inclusion of the word "whoever" is not the kind of "unequivocal statutory language sufficient to overcome sovereign immunity." *Tex. Educ. Agency v. United States Dep't of Educ.*, 992 F.3d 350, 359 (5th Cir. 2021) ("[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to overcome sovereign immunity." (internal citations removed)).

Travina cites *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1276-77 (11th Cir. 2020), for the proposition that "Congress has in fact abrogated the state's immunity through the language of the statute," yet *Barrientos* did not address the applicability

---

is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today").

of sovereign immunity to the TVPRA, but rather whether the statute "encompassed claims brought by alien detainees held in privately run detention facilities." *Id.* at 1275. The Eleventh Circuit found that the TVPRA did apply to such claims because the word "whoever" in the statute "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *Id.* at 1277 (citing 1 U.S.C. § 1). As UT Austin points out, this definition notably does not include government agencies. Dkt. 24, at 3. Moreover, the Tenth Circuit has confirmed that state universities have sovereign immunity from TVPRA claims. *Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Oklahoma*, 841 F.3d 1129, 1132-33 (10th Cir. 2016) (term "whoever" in TVPRA is "broad" and "signal[s] no intent to abrogate sovereign immunity"). Travina's TVPRA claim against UT Austin should be dismissed.

      b.   *Count II: Forced Labor*

UT Austin also moved to dismiss Travina's forced labor claim brought under Texas Penal Code § 20A.02(a)[4] and Texas Civil Practice and Remedies Code § 98.002. Dkt. 16, at 7-9. Section 98.002 allows victims of trafficking to sue "[a] defendant who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics another person." Tex. Civ. Prac. & Rem. Code § 98.002. UT Austin argues that the use of the word "defendant" in this statute "does

---

[4] Although not addressed by UT Austin, Travina may not bring a claim against UT Austin for a violation of a state criminal statute. *Williams v. Cintas Corp.*, No. 3-07-CV-0561-M, 2007 WL 1295802, at *2 (N.D. Tex. Apr. 10, 2007), *report and recommendation adopted*, 2007 WL 1300780 (N.D. Tex. May 2, 2007) ("federal courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action.").

not clearly and unambiguously waive sovereign immunity." Dkt. 16, at 9. Travina did not respond to UT Austin's arguments regarding her Section 98.002 claim. *See* Dkt. 21. Although the Court may grant UT Austin's motion to dismiss Travina's Section 98.002 claim as unopposed, the undersigned finds that this claim is properly dismissed for lack of subject matter jurisdiction. W. D. Tex. Loc. R. CV-7(D)(2) ("If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed."); Tex. Gov't Code § 311.034 ("a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language"). Indeed, Section 98.002's use of the word "defendant" to describe those who may be held liable under the statute does not serve to "unequivocally express" the state's intent to waive its immunity from suit in federal court. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) ("a state's waiver of its Eleventh Amendment immunity must be unequivocally expressed."). Travina's forced labor claim should be dismissed.

### c.    *Count IV: Negligent Hiring and Supervision*

UT Austin similarly moved to dismiss Travina's negligent hiring and supervision claim, arguing in part that the Texas Tort Claims Act's ("TTCA") waiver of sovereign immunity applies only in state court. Dkt. 16, at 9-11. Travina responds that this claim fits into the "limited waiver" of sovereign immunity provided for in the TTCA—yet she does not address UT Austin's argument that this limited waiver does not apply in federal court. Dkt. 21, at 18-19.[5] The TTCA provides that "[a] suit

---

[5] Travina erroneously cites *Thomas v. City of Houston*, No. CIV.A. H-11-3564, 2012 WL 4104788, at *5 (S.D. Tex. Aug. 23, 2012), *report and recommendation adopted in part, rejected*

under this chapter shall be brought *in state court* in the county in which the cause of action or a part of the cause of action arises." Tex. Civ. Prac. & Rem. Code § 101.102 (emphasis added). Moreover, the Fifth Circuit has found that the "only reasonable construction of the" TTCA is that it "waives sovereign immunity in state court only." *Sherwinski v. Peterson*, 98 F.3d 849, 852 (5th Cir. 1996). Travina's negligent hiring and supervision claim should be dismissed for lack of subject matter jurisdiction.

                2.        <u>Failure to State a Claim</u>

Having found that Counts 1, 2 and 4 should be dismissed for lack of subject matter jurisdiction, the undersigned now turns to UT Austin's motion to dismiss Travina's Title IX claims under Rule 12(b)(6). Dkt. 16, at 12-19. Travina brings two claims against UT Austin under Title IX based on its alleged failure to timely respond to her reports of harrassment (the "post-reporting claim), and past complaints against Liu (the "specific risk" claim). Dkt. 1, at 7-8. Travina responds that she has pleaded sufficient facts to state a claim for relief under Title IX because her "allegations have questioned whether U.T. acted at all in responding to Plaintiff's very serious Title IX allegations (or, on information and belief, the serious Title IX allegations of prior victims)." Dkt. 21, at 10-16.

---

*in part*, 2012 WL 4103932 (S.D. Tex. Sept. 17, 2012), as *Thomas v. City of Houston,* 2012 WL 4104788 at *5 (S.D. Tex. Aug. 23, 2012), omitting the subsequent history of this report and recommendation, in support of her argument that UT Austin has "failed to meet its burden of demonstrating that the claim fits within the TTCA exception to the waiver." Dkt. 21, 19-20; *Thomas v. City of Houston*, 2012 WL 4104788, at *5. The District Court rejected the very portion of the report and recommendation cited by Travina, dismissing plaintiff's defamation case as barred by the TTCA. *Thomas v. City of Houston*, No. CIV.A. H-11-3564, 2012 WL 4103932, at *2 (S.D. Tex. Sept. 17, 2012) ("Because Plaintiff has not shown that the government has waived immunity for his defamation claim, the claim must be dismissed."). The undersigned cautions Travina's counsel against misrepresenting case law to this Court.

Title IX prohibits discrimination on the basis of sex in federally funded educational programs and is enforceable through an individual's private right of action for the recovery of damages. 20 U.S.C. § 1681(a); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). A school may be liable for harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the school's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011). UT Austin argues that Travina has failed to properly allege the deliberate indifference element of her post-reporting claim, and did not include enough factual content in her complaint to support her specific risk claim. Dkt. 16, at 13-19. The undersigned will address each of these claims below.

a.   *Post-reporting claim*

UT Austin first argues that Travina's post-reporting claim must be dismissed because she has not properly alleged that the university was deliberately indifferent to her report of Liu's sexual assault. Dkt. 16, at 13-16. First, UT Austin attacks Travina's Title IX claim on the basis that, while she pleaded that the university's Title IX office scheduled an appointment with her after she filed her complaint, she did not plead that she attended the appointment. *Id.* at 13-14. UT Austin implies, without any factual support, that Travina never attended such an appointment, and as such, she cannot bring a Title IX claim against the university because she did not

help facilitate the university's investigation. *Id.* at 14. UT Austin cites one case decided on summary judgment, where complainant's mother's failure to cooperate with a school's investigation doomed her Title IX post-reporting claim. Dkt. 16, at 14 (citing *Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *6 (5th Cir. Feb. 4, 2022) (affirming finding, on summary judgment, that school district was not deliberately indifferent where mother of student "did not show up" to meeting with school official regarding the assault at issue).

While discovery may reveal that Travina did not cooperate with the university's attempts to respond to her report of Liu's assault, at this stage the Court must view all well-pleaded fact in the light most favorable to Travina. *Iqbal*, 556 U.S. at 678; *In re Katrina*, 495 F.3d at 205. Based on Travina's factual allegations, including the alleged slow pace at which the university processed her complaint, it is not unreasonable to infer at this stage that Travina cooperated with the investigation, and that any delay resulted from the university's own decision as to how to handle the Title IX complaint against Liu. Dkt. 1, at 5 (alleging reluctance on the part of multiple mandatory reporters to file a Title IX report on behalf of Travina); *see id.* (alleging that it took UT Austin six months to open a formal investigation into Liu following her first complaint of his assault on campus).

UT Austin nonetheless hones in on what it believes to be "significant" omissions in Travina's allegations regarding deliberate indifference, arguing that she failed to plead facts showing that UT Austin's failure to take action against Liu between the referral of her complaint in June 2020, and the closing of the

investigation in September 2020 (allegedly due to Liu's departure from the university), constituted deliberate indifference. Dkt. 16, at 15. For example, UT Austin argues that fatal to Travina's complaint are her failure to identify when exactly Liu left the university, or to "highlight any specific shortcomings in the Title IX review process." *Id.* at 15.

However, UT Austin also appears to acknowledge its own delay in investigating Travina's assault—a delay highlighted in her complaint—by arguing that because it "was reeling from the then-nascent COVID-19 epidemic," its obligations under Title IX were somehow modified with regard to Travina's Title IX complaint, and in any event, does not render its months-long delay anything more than "negligent," "unreasonable," "inept," or "erroneous." *Id.* at 16 (citing *Sanches*, 647 F. 3d at 165); Dkt. 1, at 8 (alleging that UT Austin failed "to timely investigate and address the sexual harassment"). Again, while discovery may reveal that UT Austin's mandatory reporters' "reluctance" to report her assault, and the months-long delay in advancing the investigation into Liu, did not constitute "deliberate indifference" for the purposes of establishing liability under Title IX, at the motion to dismiss stage, Travina need not include the details UT Austin believes she must include to properly state a claim under Title IX.

Moreover, as Travina points out, courts in this Circuit have found allegations in support of a Title IX claim sufficient where plaintiff alleged, as here, that the university did not discipline or bar the alleged abuser from interacting with students, and that the victim was not provided with information regarding the outcome of the

investigation. Dkt. 1, at 4-8; *see, e.g., Doe v. Univ. of N. Texas Bd. of Regents*, No. 4:16-CV-138, 2016 WL 11481144, at *4 (E.D. Tex. May 24, 2016). Contrary to UT Austin's assertion that Travina must specifically identify what it did not do in its investigation, she need not "provide at the pleading stage more detailed facts to establish a negative—that [UT Austin] did not act." *Doe,* 2016 WL 11481144 at *4. Indeed, as the court in *Doe* reasoned, "[i]f [the university] conducted a sufficient investigation and took the appropriate actions, it would be no great burden to file an early Motion for Summary Judgment that includes the evidence necessary to establish that it did respond reasonably to Plaintiff's risk of harm." *Id.*

The undersigned declines UT Austin's invitation to hold Travina to a higher pleading standard than that required to state a claim for relief under Title IX. *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 782 (W.D. Tex. 2018) (Plaintiff's factual allegations "must rise to the level of plausibility, not certainty."). Travina has sufficiently pleaded a post-reporting claim against UT Austin, and the university's motion to dismiss this claim should be denied.

b.   *Specific Risk claim*

UT Austin also moved to dismiss Travina's specific risk claim because she failed to properly allege that the university had "actual knowledge" of previous Title IX complaints against Liu. Dkt. 16, at 16-19. Travina specifically alleged, in various portions of her complaint, that UT Austin was "on notice of his inappropriate behavior with female students due to multiple prior Title IX reports against Mr. Liu," and that it "failed to investigate and discipline him in a timely manner consistent with federal

14

law so as to prevent future harassment and abuse." Dkt. 1, at 3, 6, 8 ("On information and belief, Mr. Liu had previously been the subject of numerous Title IX complaints based on sexual harassment and abuse, but U.T. had not taken any meaningful action to redress and prevent future harassment and had allowed him to continue as a Teaching Assistant with access to students and other faculty and staff.").

UT Austin argues that Travina's allegations that the university had actual knowledge, through prior Title IX complaints, that Liu had harassed or abused other female students is insufficient to state a specific risk complaint because she does not identify who was harassed, when the harrassment took place, and what form the prior harrassment took. Dkt. 16, at 18. UT Austin relies on cases where courts have found prior complaints against alleged abusers to be insufficient to put schools on actual notice of a specific risk of harm to other students, yet none of those cases involved an allegation that an alleged abuser was the subject of multiple prior Title IX complaints, which Travina has alleged here. Dkt. 1, at 3-8; Dkt. 16, at 17-19 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Escue v. No. Okla. Coll.*, 450 F.3d 1146, 1153 (10th Cir. 2006)).

UT Austin insists it does not suggest that Travina "provide inside details" relating to these alleged prior incidents, yet simultaneously argues that she must prove that the prior Title IX reports against Liu "even exist." Dkt. 24, at 6. UT Austin attempts to distinguish the Fifth Circuit's instruction in *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.* that plaintiff need not include discoverable information within defendant's control in her complaint by arguing that

in that case, the plaintiff knew of the existence of a document but not its contents, whereas here Travina cannot confirm the existence of prior Title IX complaints against Liu. Dkt 24, at 5-6; 892 F.3d 719, 730 (5th Cir. 2018) ("when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint").

However, unlike in *Innova*, where plaintiff knew of the existence of certain health plan information related to its ERISA claims because it sought reimbursement for medical expenses from insurance providers under those plans, here it is unclear how Travina could confirm the existence of previous Title IX complaints against Liu without access to documents solely within the university's possession. See Dkt. 1; *see Innova*, 892 F.3d at 719. Taking into account Travina's "limited access to crucial information," her allegations based "on information and belief" that Liu was the subject of multiple prior Title IX complaints is sufficient to raise the inference that the university was on notice of the danger Liu posed to female students. Dkt. 1, at 3-8; *Innova*, 892 F.3d at 730-31 ("[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of [his or her] limited access to crucial information."). UT Austin's motion to dismiss Travina's specific risk claim should be denied.

## B.    Liu's Motion to Dismiss

Liu moved to dismiss two of the ten causes of action Travina brought against him. Dkt. 23, at 2. As noted above, Travina does not oppose Liu's motion to dismiss

her indecent assault claim, Dkt. 25, at 3, and as such, the undersigned will recommend that the District Court grant Liu's motion in this respect. The undersigned will address the parties' arguments regarding Liu's motion to dismiss Travina's intentional infliction of emotional distress ("IIED") claim below.

Liu argues that Travina's IIED claim should be dismissed because her alleged damages can be remedied by other recognized tort claims in Texas, which are already included in her complaint. Dkt. 23, at 2, 6-7. Travina responds that because Texas law does not recognize a cause of action for sexual harrassment, and none of her other claims seek redress for the emotional distress she experienced as a result of Liu's harrassment, her IIED claim may proceed. Dkt. 25, at 3-4. In his reply, Liu insists that Travina's threat of bodily injury claim is based on the same set of facts as her IIED claim, and in any event, Liu's alleged "sexual overtures or lascivious remarks" are not sufficiently extreme[6] to plausibly state an IIED claim. Dkt. 26, at 2-4. The undersigned disagrees.

While Liu is correct that IIED is a "gap filler" tort meant to allow "recovery in those rare instances [in] which a [plaintiff] ... has no other recognized theory of redress,"[7] here the factual allegations underpinning Travina's IIED claim can be

---

[6] Because Liu did not raise this argument until his reply in support of his motion to dismiss, and did not include it in his motion, the undersigned will not address it. *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments.").

[7] Liu inexplicably cites *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998), for this quote, yet no such language appears in that case. Dkt. 23, at 6. Nonetheless, the court in *Standard Fruit* did hold that "a claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Standard Fruit*, 985 S.W.2d at 68 (dismissing IIED claim brought by bystander who witnessed motor vehicle accident).

considered distinct from those that form the basis of her threat of bodily injury claim. Dkt. 1, at 3-6; *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549 (N.D. Tex. 2005) (citing *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)). Indeed, while Travina's threat of bodily injury claim arises from Liu's sexual assault and attempted rape, her IIED claim arises from the aggressive sexual comments that predated the sexual assault, as well as Liu's threats related to her immigration status and impoverishment. *See* Dkt. 1, at 3-6; Dkt. 25, at 3-4. Moreover, as Travina points out, "there is no common-law tort for sexual harassment in Texas," and as such, she does not have an existing tort under which she may seek redress for Liu's sexual harassment as separate from his assault. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 799 (Tex. 2010). Because Travina's IIED claim arises from facts that "may be considered to be independent" from the facts underlying her other tort claims, including her threat of bodily harm claim, she has stated a claim for IIED. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 449 (Tex. 2004); *Dunn v. Hunting Energy Servs.*, No. CV H-16-1760, 2016 WL 11655114, at *4 (S.D. Tex. Oct. 24, 2016) (IIED claim is "useful when the complained of conduct is not covered by another type of claim."). Liu's motion to dismiss Travina's IIED claim should be denied.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** UT Austin's motion to dismiss, Dkt. 16. Specifically, Travina's TVPRA, forced labor,

and negligence claims should be dismissed. UT Austin's motion should be denied in all other respects.

The undersigned **FURTHER RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Liu's motion to dismiss, Dkt. 23. Specifically, Travina's indecent assault claim should be dismissed, and Liu's motion should be denied in all other respects.

**IT IS FURTHER ORDERED** that this cause of action is **REMOVED** from the undersigned's docket and **RETURNED** to the docket of the Honorable Robert Pitman.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

19

SIGNED May 2, 2022.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE