UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANASTASIYA TRAVINA,<br>*Plaintiff* | §<br>§<br>§ | |
| v. | § | No.  1:21-CV-01040-DAE |
| | § | |
| THE UNIVERSITY OF TEXAS<br>and JACK LIU,<br>*Defendants* | §<br>§<br>§<br>§<br>§ | |

# ORDER

Before the Court is Plaintiff Anastasiya Travina's Opposed Motion to Disqualify Opposing Counsel for Conflict of Interest, Dkt. 54. The District Judge referred the motion to the undersigned for disposition. The Court set the motion for hearing, Dkt. 62, and after considering the parties' arguments at that hearing, along with their filings and the applicable law, the Court denies the motion for the reasons set forth below.

## I.   BACKGROUND

Travina, a former graduate student at the University of Texas, sued the University and her former teaching assistant, Jack Liu, in November 2021 for various causes of action arising out of abusive conduct alleged to have been directed at her by Liu during her time as a student. Dkt. 1. The facts underlying the lawsuit are set out in the undersigned's report and recommendations on Defendants' motions to dismiss. *See* Dkt. 27, at 1-3.

1

Travina's motion here seeks to disqualify Liu's counsel, lawyers at David K. Sergi & Associates, P.C., arguing that contact she made with the firm just before filing her lawsuit creates a conflict that precludes the firm's representation of Liu in this case. Dkt. 54. In particular, Travina states that in July of this year, while looking through documents that might be responsive to Defendants' discovery requests, she came across an email she had sent to an individual at the Sergi firm in October 2021, about a month before she filed her lawsuit. Dkt. 54-1, at 1. She explains that from the time she learned of the Sergi firm's appearance in the case in June 2022 until July 2023, she did not recall having communicated with the firm about the case. *Id.* After discovering this email, however, she looked back through her emails and phone records to determine the extent of her contact with the firm. *Id.* at 2.

Travina's investigation jogged her memory enough that she was able to piece together the following:

- She contacted the Sergi firm after being referred to them by another attorney. *Id.*

- Her initial attempt to contact the firm was via an intake form on the firm's website, where she input her contact information and a general description of her claim. *Id.*

- She did not receive a response to her online solicitation, so she called the firm at the number listed on its website on October 25, 2021. *Id.*

- After a few calls, she eventually spoke with a woman named "Esther" (confirmed by Sergi to be Esther Mendoza, who worked at the firm as a

receptionist at the time of the calls and who left the firm in March 2022, Dkt. 61-1, at 2). Dkt. 54-1, at 2.

- In a roughly 5-minute conversation, Travina told Ms. Mendoza she had attempted to contact the firm via its online intake form; Ms. Mendoza told Travina she could not find the submission and then asked Travina to tell her about the case, which Travina did. *Id.*

- At the conclusion of this conversation, Ms. Mendoza instructed Travina to email additional information about her case to the firm's email address. Travina did so, sending a "detailed 2,007-word email containing highly confidential and privileged information." *Id.*

- The initial email bounced back, so Travina called again to confirm the proper email address with Ms. Mendoza, and after re-sending the email, Ms. Mendoza confirmed on the call that she received it. *Id.*

- Travina and Ms. Mendoza spoke briefly again shortly thereafter; Ms. Mendoza stated that she had read the email, that she thought it was "'horrible what happened to you,'" and that she would be in touch about scheduling an appointment to meet with Sergi "'maybe next week.'" *Id.* at 2-3.

That was the last of Travina's contact with the firm. Shortly after these communications with Ms. Mendoza, Travina retained the counsel that is currently representing her. *Id.* at 3. Travina states that she made all of these confidential communications with the intent to retain the Sergi firm as counsel for her claims. *Id.*

For their part, Liu's present and former counsel at the Sergi firm disclaim any knowledge of Travina's interactions with Ms. Mendoza, and the attorneys and paralegal at the firm who have worked on this case deny ever having spoken directly with Travina about her case. Dkts. 61-1, 61-3, 61-4, 61-6. After receiving notice from Travina's counsel in July 2023 of Travina's recent recollection of her October 2021 contact with the firm, Sergi hired an outside IT vendor to investigate the claim. Dkt. 61-1, at 1. That investigation revealed no evidence that Sergi or anyone else at the firm, other than Ms. Mendoza, had any email contact with Travina. *Id.* at 1-2; Dkt. 61-2. The only email between Travina and the firm that the vendor was able to identify was a single email sent by Travina to Ms. Mendoza on October 25, 2021, which the vendor confirmed was never forwarded to anyone within the firm. Dkt. 61-2, at 2. The vendor further stated that he "locked the email sent by Ms. Travina and it cannot be accessed by anyone at David K. Sergi & Associates, P.C.," and that "[c]urrently [he is] the only one who can access the email." *Id.*

## II.     LEGAL STANDARD

"Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995). "When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *U.S. Fire*, 50 F.3d at 1312). The Local Rules of the Western District of Texas, in a section titled "Discipline of Attorneys," provide "[m]embers of the bar of this court and any


attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct ....” W.D. Tex. Loc. R. AT-7(a).

The Fifth Circuit has made clear, however, the Texas Rules “‘are not the sole authority governing a motion to disqualify.’” *ProEducation*, 587 F.3d at 299 (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)); *see also In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (“The district court clearly erred in holding that its local rules, and thus the Texas rules, which it adopted, are the 'sole' authority governing a motion to disqualify.”). “Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law.” *Dresser*, 972 F.2d at 543 (citing *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)). Accordingly, in addition to the local rules, courts in this circuit look to “[1] the American Bar Association's ('ABA's') Model Rules of Professional Conduct; [2] the ABA's Model Code of Professional Responsibility; and [3] the state rules of conduct.” *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).

The Fifth Circuit has further made clear that regardless of the source of the ethical standard, “inflexible application of a professional rule is inappropriate because frequently it would abrogate important societal rights, such as the right of party to his counsel of choice and an attorney's right to freely practice her profession.” *U.S. Fire*, 50 F.3d at 1314. Moreover, “[a]ll of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous

5

deference to the litigant's rights." *Id*. With this guidance in mind, the undersigned proceeds to the particular arguments presented here.

### III. DISCUSSION

The facts underlying this disqualification dispute are largely undisputed: Travina initially attempted to contact the Sergi firm via an online form, then actually made contact via telephone with a firm receptionist, she then sent an email to that receptionist detailing confidential information about her claim, that email was never forwarded to anyone else within the firm, and the attorneys and paralegal involved in the case declare under penalty of perjury that they have no knowledge of this contact that Travina had with the firm's receptionist.

Travina's motion poses 3 questions for the Court to answer: (1) did this contact give rise to an attorney-client relationship between Travina and the Sergi firm; (2) if not, did her conveying confidential relationship about her case mandate disqualification of the Sergi firm from representing Liu; and (3) if not, should the Court nonetheless, under the facts presented, exercise its discretion to disqualify the Sergi firm. For the reasons stated below, the Court answers "no" to each of these questions.

#### A. Attorney-Client Relationship

In the Fifth Circuit, the applicable test for disqualification of attorneys is articulated in *American Airlines*. To disqualify an attorney or firm under the *American Airlines* test, a moving party must show: "(1) an actual attorney-client relationship between the moving party and the attorney [she] seeks to disqualify and

6

(2) a substantial relationship between the subject matter of the former and present representations." 972 F.2d at 614 (citations and quotations omitted). Rule 1.09(a) provides that:

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client: …
>
> (2) if the representation in reasonable probability will involve a violation of Rule 1.05 [involving sharing of confidential information]; or
>
> (3) if it is the same or a substantially related matter.

Tex. Disciplinary R. Prof'l Conduct 1.09(a), *reprinted in* Tex. Gov't Code tit. 2, subtit. G, app. A. The rule incorporates Rule 1.05(b)(3) which prohibits a lawyer's use of confidential information obtained from a former client to that former client's disadvantage. *American Airlines*, 972 F.2d at 615. Texas Rule 1.09 therefore explicitly prohibits a lawyer from appearing against a former client if the representation "in reasonable probability will involve the use of confidential information or if the current matter is substantially related to the matters in which the lawyer has represented the former client." *Id*. Model Rule 1.9 is identical to Texas Rule 1.09 in all important respects. *Id*. n. 2.

The parties here do not dispute that Travina shared confidential information with Ms. Mendoza. And having reviewed in camera a copy of the email Travina sent to Ms. Mendoza, the undersigned finds that she did indeed convey confidential, privileged information in that email. Nor do the parties dispute that this case is "substantially related" to the present case. Thus, if an "an actual attorney-client relationship" existed between Sergi or the other firm attorneys involved in the case,

then those attorneys cannot represent Liu in this matter, as it is beyond dispute that Liu is adverse to Travina here.

"An attorney-client relationship depends on a contract, express or implied, between the parties." *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). "[W]hether the agreement is express or implied, there must be evidence *both* parties intended to create an attorney-client relationship—one party's subjective belief is insufficient." *Kiger v. Balestri*, 376 S.W.3d 287, 291 (Tex. App.—Dallas 2012, pet. denied) (citing *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 634 (Tex. App.—Houston [14th Dist.] 2010, no pet.)). Further, courts "determine whether a[n] [attorney-client] contract can be implied using an objective standard ... and ... do not consider [the parties'] unstated, subjective beliefs." *Span Enters. v. Wood*, 274 S.W.3d 854, 858 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "[T]he focus is on 'whether there is a meeting of the minds.'" *Border Demolition & Env't, Inc. v. Pineda*, 535 S.W.3d 140, 152 (Tex. App.—El Paso 2017, no pet.) (quoting *State v. Martinez*, 116 S.W.3d 385, 392 (Tex. App.—El Paso 2003, no pet.)).

Here, because there is no express agreement by the Sergi firm to represent Travina, if an attorney-client relationship existed, it would have to have been implied by the firm's *and* Travina's conduct and not merely either party's unstated, subjective beliefs. There is no evidence here of the requisite meeting of the minds that would give rise to an implied attorney-client relationship. At most, the record demonstrates Travina's unilateral attempt to retain the firm, but there is no evidence that the firm did anything that could objectively be interpreted as intent to take Travina on as a

8

client. Ms. Mendoza, a non-attorney receptionist, requested and received information from Travina and stated that she would forward it on to an attorney at the firm. But the only evidence in this record shows that this never happened and that no attorney (or even paralegal) consulted with Travina about her case or took any action on her behalf in this case.

This conclusion, however, does not excuse the Sergi firm of its obligations to Travina, nor does it dispose of the disqualification question. The mere fact that Travina conveyed, and the firm accepted, confidential information from Travina obliged the firm to safeguard that information and *could* disqualify the firm from representing Liu, even absent a formal attorney-client relationship with Travina. However, as discussed below, the Court concludes that under the facts here, the firm is not disqualified on this basis.

### B.     Disqualification from Conveyance of Confidential Information

Even absent an explicit or implied attorney-client relationship, disqualification may still be required under certain circumstances. For example, comment 4A to Rule 1.09 states that "[t]he 'same matter' aspect of this prohibition [i.e., representing a client with an adverse position to a former client] prevents a lawyer from switching sides and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer while seeking in good faith to retain the lawyer." Tex. Disciplinary R. Prof'l Conduct 1.09 cmt. 4A. Moreover, under Rule 1.05—which forbids an attorney to disclose a client's confidential information or use any acquired confidential information against the client—an attorney can acquire a fiduciary

9

obligation to retain a prospective client's confidences whether or not an attorney-client relationship is consummated. *See* Tex. Disciplinary R. Prof'l Conduct 1.05 cmt. 1 ("Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidential information of one who has employed or sought to employ the lawyer."). Travina argues that these rules mandate disqualification of the Sergi firm in this case.

Travina points to the Texas Supreme Court's reasoning in *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466 (Tex. 1994) (per curiam). The court there considered "whether a law firm must be disqualified from ongoing litigation because it temporarily employed a legal secretary who had previously worked for opposing counsel." *Id*. at 466. The legal secretary in question had originally worked for a firm representing over four hundred plaintiffs in the underlying litigation. *Id*. at 466-67. During her employment, she "opened client files, interviewed clients daily, prepared investigative reports, and oversaw the clients' medical appointments." *Id*. at 467. Six months after leaving that firm, a temporary employment agency placed the secretary at a firm that was representing two of the defendants in the same underlying case. *Id*. Her responsibilities at the defense firm included secretarial and clerical work, such as acting as the firm's contact person for scheduling depositions. *Id*. Sometime after she joined the firm, she informed her employer that she had previously worked for the plaintiffs' attorney, at which point a partner instructed her to avoid working on the case (though she did continue to schedule depositions in the case). *Id*. The

defense firm terminated her employment once it learned that counsel for plaintiffs intended to move to disqualify the firm based on the secretary's involvement. *Id.*

Considering these facts, the Texas Supreme Court observed that "[t]he test for disqualification is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure." *Id.* The court pointed to the fact that the firm "permitted [the legal secretary] to work on the very litigation that she had previously worked on for opposing counsel—even after the firm became aware that she had previously worked on the case" and noted that "the extent of [the legal secretary]'s prior work on the case … even the duties described—when carried out over a period of weeks—posed an unacceptable danger of a prohibited disclosure." *Id.* at 468. In subsequent cases, the Texas Supreme Court has noted that, in the context of a side-switching non-attorney, as in *Grant*, "unlike with attorneys, a nonlawyer is not generally subject to an irrebuttable presumption of having shared confidential information with members of the new firm," and that "the hiring firm may employ *effective* screening measures to shield the employee from the matter in order to avoid disqualification." *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010) (citing *Grant*, 888 S.W.2d at 468); *id.* at 828 (finding disqualification required where the firm failed to properly screen non-attorney employee and the employee performed actual work on the case).

What is clear from these authorities is that while the actions of a non-attorney *may* lead to disqualification, it is not automatic. Travina essentially argues that Ms. Mendoza is the same as the side-switching non-attorneys in these cases, and that

11

because her involvement in this case was not discovered until after she had left the Sergi firm, it would be impossible to employ screening measures, and thus the firm must be disqualified.

The facts of this case, however, do not fit the scenarios addressed in *Grant* and *Columbia Valley* closely enough to impose the harsh remedy of disqualification. While it is true that Travina conveyed confidential information to Ms. Mendoza, the record does not establish the sort of "genuine threat" of disclosure present in those cases, given Ms. Mendoza's comparatively minimal involvement. To apply the reasoning in these cases here would be to apply just the sort of mechanical, inflexible test that the Fifth Circuit has cautioned against. *U.S. Fire*, 50 F.3d at 1314; *see also Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 60 F. Supp. 3d 751, 769 (W.D. Tex. 2014) ("Omron's argument is premised on a rigid application of the ethics rules, but the Fifth Circuit instructs courts against this approach."). The Court declines to do so and therefore concludes disqualification is not required on this basis.

### C.     Discretionary Disqualification

Finally, Travina argues that if the Court finds that disqualification is not mandatory, the Court should still disqualify the Sergi firm as a matter of discretion. "The party seeking to disqualify an attorney bears the burden of proving that disqualification is warranted, and that burden is heavy." *Spears v. McCraw*, No. A-17-CA-1105-RP, 2020 WL 589538, at *2 (W.D. Tex. Feb. 5, 2020) (citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981)).

Moreover, Travina "must show [she] suffered actual prejudice from any alleged violation." *Id.* (citing *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998)).

Liu points the Court to the factors considered by the Texas Supreme Court in *In re Meador* as a guide to the discretionary analysis here. Dkt. 61, at 10-11. In that case, the court considered six factors in weighing whether disqualification was warranted:

> 1) whether the attorney knew or should have known that the material was privileged;
>
> 2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;
>
> 3) the extent to which the attorney reviews and digests the privileged information;
>
> 4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;
>
> 5) the extent to which movant may be at fault for the unauthorized disclosure;
>
> 6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Meador*, 968 S.W.2d at 351-52. Travina correctly notes, however, *see* Dkt. 63, at 7, that the court in *Meador* observed that these factors "apply only when a lawyer receives an opponent's privileged materials outside the normal course of discovery." 968 S.W.2d at 352.

Nonetheless, the undersigned finds that that some of the *Meador* factors are relevant considerations here and that none favors disqualification. While the first two factors do not directly apply to the facts of this case, the record is clear that once Liu's

13

attorneys were made aware of the existence of Travina's communications with Ms. Mendoza, they acted promptly to address it. And no attorney at the Sergi firm "review[ed]" or "digest[ed]" Travina's privileged information (factor 3). To the contrary, they hired an outside IT vendor to sequester the email to ensure that no one from the firm could access it. And while the information conveyed by Travina, if disclosed, *could* prejudice her defense (factor 4), and Travina should not be considered at fault (factor 5), the record is clear that no disclosure occurred, and that Travina has not suffered any prejudice as a result of her communication with Ms. Mendoza. On the other hand, disqualifying Liu's counsel at this late stage of the litigation would undoubtedly result in significant cost and delay for Liu (factor 6), and, indeed, would delay all the parties' ability to move forward with the case until Liu's new counsel could be brought up to speed. *See, e.g.*, *Omron*, 60 F. Supp. 3d at 771 ("The timing of the motion also militates against disqualification. Typically, these motions are filed early in the litigation. When they are filed later in the litigation when discovery has all but ended and trial is near, courts are less inclined to grant them." (internal citations omitted)).

After weighing these considerations—particularly the balance of the prejudice that would be suffered—the Court cannot conclude that it should exercise its discretion to disqualify the Sergi firm under the facts presented here. Travina puts forth no credible evidence of any prejudice she has or may suffer as a result of her communication with Ms. Mendoza. The best she can muster is Liu's counsel's apparent reference to a "key stroke logger," which Travina argues is a clear indication

that attorneys at the Sergi firm have reviewed her communications with Ms. Mendoza. This speculative argument far from satisfies the heavy burden Travina bears to prove the Court should disqualify the Sergi firm as a matter of discretion.

The Sergi firm has done everything within its power to ensure that no prejudice might eventually flow from Travina's contact with the firm. And while any alleged prejudice to Travina is exceedingly minimal, the prejudice to Liu here would be substantial. Under these circumstances, the Court will not exercise its discretion to disqualify the Sergi firm from representing Liu in this case.

## IV. ORDER

Accordingly, the Court **DENIES** Travina's Motion to Disqualify Opposing Counsel, Dkt. 54.

SIGNED December 11, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE